## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Labsource, LLC,<br><br>Debtor(s). | C/A No. 19-05161-HB<br><br>Adv. Pro. No. 21-80059-HB<br><br>Chapter 7 |
| John K. Fort, Trustee,<br><br>Plaintiff(s),<br><br>v.<br><br>Aaron Kibbey, individually and as Chief Restructuring Officer of Oaktree Medical Centre, PC; Timothy Daileader, individually and as Independent Director of Oaktree Medical Centre, PC; Huron Consulting Services, LLC aka Huron Consulting Group; Mark Freedlander, David Pivnick, McGuireWoods LLP,<br><br>Defendant(s). | **ORDER GRANTING IN PART, DENYING IN PART THE MOTION TO DISMISS FILED BY McGUIREWOODS LLP, MARK FREEDLANDER, & DAVID PIVNICK** |

**THIS MATTER** is before the Court on the Motion to Dismiss filed by Defendants McGuireWoods, LLP ("MGW"), Mark Freedlander, and David Pivnick (collectively, "MGW Defendants"), seeking dismissal of the Amended Complaint filed by John K. Fort, Chapter 7 Trustee for the bankruptcy estates of Oaktree Medical Centre, P.C., Oaktree Medical Centre, LLC, and Labsource, LLC (collectively, "Debtors").[1]  The MGW Defendants contend the Court should dismiss certain causes of action pursuant to Fed. R. Civ. P. 12(b)(1)[2] because the Trustee lacks standing, and under Fed. R. Civ. P. 12(b)(6) because they fail to state a claim for relief.

---

[1] ECF No. 39, filed Dec. 21, 2021.  The Trustee filed identical Amended Complaints in two other adversary proceedings, Adv. Pro. Nos. 21-80057-hb and 21-80058-hb, but the matters have not been consolidated.  Substantially similar Motions were filed by the MGW Defendants therein.  A separate order will be entered in each adversary proceeding to address its relevant Motion and related pleadings.

[2] Made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012.

## SUMMARY OF ALLEGATIONS OF THE AMENDED COMPLAINT[3]

This adversary proceeding concerns issues with the performance of various professionals retained by the Debtors to aid in their restructuring. Debtors comprised a pain management practice privately owned by Daniel McCollum. While operating, Debtors entered an agreement with Fidus Investment Corporation and West Family Investments (collectively, the "Lenders") for a $14,000,000.00 senior secured credit facility. After Debtors failed to repay the Lenders on the maturity date, the Lenders exercised one of their contractual remedies in July 2018 by terminating McCollum's rights to exercise control over the Debtors. The Lenders also appointed Defendant Tim Daileader as an Independent Director/Manager with authority and control over the Debtors' day-to-day management, financials, and operations.

Daileader acknowledged the Debtors were subject to varying degrees of financial distress exemplified by, among other things, their failure to timely pay withholding tax obligations and inability to pay the Lenders upon maturity of the credit facility. Soon after becoming Independent Director, Daileader realized the Debtors' financial issues resulted largely from a lack of oversight and qualified management. On or about July 2018, Daileader retained MGW on behalf of the Debtors for the limited capacity as work-out counsel with respect to the Lenders. This encompassed regulatory compliance necessary to refinance the credit facility, including the proper implementation of a management services organization ("MSO").[4] Prior to its engagement, MGW represented itself as having large healthcare and mergers and acquisitions practices with

---

[3] The following is a summary of the allegations of the Amended Complaint and does not reflect any finding of fact by the Court.

[4] The Amended Complaint alleges: an MSO generally refers to a health care specific administrative and management engine that provides a host of non-clinical administrative and practice management functions to a medical practice; a primary advantage of an MSO is to have access to management services and to ensure the lowest prices on supplies and services; critical components of an MSO centralize the administrative and management functions of health practices to leverage resources efficiently and allow providers to focus on providing quality clinical care to patients; and one of the purposes is to find "at risk" or non-compliant billing practices and recommend corrective action plans and best practices for compliance to meet regulatory requirements or billing guidelines.

experience in transactions similar to the sale of the Debtors that were being explored at that time. Freedlander and Pivnick are attorneys at MGW.

Further complications with the Debtors' operations arose during MGW's retention, including raids conducted by the Federal Bureau of Investigation, Drug Enforcement Agency, and U.S. Department of Health and Human Services at various facilities of the Debtors on October 30, 2018. At that time, pending refinancing efforts were terminated and the roles of outside professionals were expanded. MGW was to now provide restructuring, corporate, and healthcare legal services to the entire enterprise. Debtors also retained Defendant Aaron Kibbey (an employee of Defendant Huron Consulting Services, LLC) as MSO-level Chief Restructuring Officer in November 2018.

Despite the employment of these professionals and expansion of their involvement, there still did not appear to be progress toward a corporate restructuring. Additionally, by April 2019 Debtors borrowed more from Lenders, which exceeded $5,000,000.00, to pay their professional fees and make interest payments on prior loans. The Trustee asserts these substantial fees resulted, in part, from excessive billing by MGW, which had 50 attorneys billing the Debtors during its engagement as counsel. Even though other members of management expressed to Daileader and Huron the professional fees were unnecessary and unsustainable, MGW remained in its role as counsel for the Debtors.

Despite working for the Debtors for approximately one year and incurring significant fees, the professionals failed to effectuate an MSO, and no restructuring plan was developed or implemented. When the professionals realized a restructuring was not tenable, they proposed a Chapter 11 reorganization in July 2019 that required an additional $5,000,000.00 in funding from

the Lenders. After the Lenders refused to loan further amounts or fund a Chapter 11 reorganization, Chapter 7 preparations began.

On September 18, 2019, Debtors paid Huron and MGW their final invoices, with $61,620.00 wired to MGW.  The next day, Debtors filed separate voluntary petitions for Chapter 7 relief in the U.S. Bankruptcy Court for the Western District of North Carolina.  Venue was transferred to this Court on September 30, 2019, and the Trustee was appointed in all three cases. The Trustee asserts these professionals mismanaged the Debtors, thereby harming the estates and ultimately all creditors by diminishing the Debtors' assets, increasing the Debtors' liabilities, and prioritizing payment of their own professional fees over payments to creditors while operating the Debtors and/or working for the Debtors in a fiduciary capacity.

On September 17, 2021, the Trustee filed this adversary proceeding.  After the MGW Defendants and others filed motions to dismiss, the Trustee filed an Amended Complaint on December 7, 2021, addressing deficiencies.  The Trustee asserts the MGW Defendants owed professional duties to the Debtors and, upon their insolvency, to the Debtors' creditors.  The Trustee alleges MGW and Freedlander knew from the outset that the Debtors' situation was dire but were eager to be involved for as long as possible because of the considerable attorneys' fees the matter generated.  The Trustee asserts the MGW Defendants and others did not perform as intended, breached their duties, caused damage to the Debtors and, consequently, damage to all creditors.  Specifically, the MGW Defendants depleted the Debtors' cash by being paid professional fees of approximately $1,458,637.08 while the Debtors' liabilities grew.  Therefore, the Trustee claims he is entitled to damages on behalf of the Debtors' estates and/or the creditors by asserting the following causes of action against the MGW Defendants: Breach of Fiduciary Duty; Aiding and Abetting Breach of Fiduciary Duty; Negligence/Professional Malpractice; Civil

4

Conspiracy; Unjust Enrichment; Actual Fraud under § 548(a)(1)(A); Constructive Fraud under § 548(a)(1)(B); Preference under § 547; Unreasonable Compensation under § 329; Recovery of All Transfers under § 550; and Breach of Contract.

The MGW Defendants argue that to the extent the state law causes of action (i.e., Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty, Negligence/Professional Malpractice, Civil Conspiracy, and Unjust Enrichment) are asserted on behalf of creditors, they are entitled to dismissal under Rule 12(b)(1) because the Trustee lacks standing.  The MGW Defendants also assert the causes of action for Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty, Negligence/Professional Malpractice, Civil Conspiracy, Unjust Enrichment, and Preference under § 547 should be dismissed under Rule 12(b)(6).   The Motion has been fully briefed[5] and is ripe for disposition.

### DISCUSSION AND CONCLUSIONS

### I. JURISDICTION

The Amended Complaint alleges this Court has jurisdiction under 28 U.S.C. § 1334 and this matter is a core proceeding under 28 U.S.C. § 157(b)(2).  To the extent Article III of the Constitution does not permit any cause of action asserted herein to be treated as "core," the Trustee consents to this Court entering final orders or judgment pursuant to 28 U.S.C. § 157(c)(2).  The MGW Defendants assert this Court lacks jurisdiction under 28 U.S.C. §§ 157 and 1334 to preside

---

[5] *See* ECF Nos. 46 (the Trustee's Memorandum in Opposition, filed Jan. 26, 2022), 51 (the MGW Defendants' Memorandum in Reply to the Trustee's Response, filed Feb. 2, 2022), and 65 (the Trustee's Memorandum in Sur-Reply to the MGW Defendants' Reply, filed Feb. 23, 2022). The Trustee's original complaint was filed on September 17, 2021.  The MGW Defendants, as well as others, filed a motion to dismiss. (ECF No. 18, filed Nov. 3, 2021).  On December 7, 2021, the Trustee filed a response to the MGW Defendants' motion and an Amended Complaint, mooting the motion to dismiss.

over the state law causes of action because they do not arise under Title 11, arise in or are related to cases under Title 11 and are not "core proceedings."[6]

The Trustee's claims, including the state law causes of action, appear at a minimum related to the Debtors' Chapter 7 bankruptcy cases. Accordingly, the U.S. District Court for the District of South Carolina has jurisdiction under 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157(a) and Local Civ. Rule 83.IX.01 (D.S.C.), the district court has referred this proceeding to this Court. If it is determined that this Court lacks authority to enter this Order as a final order, the Court submits this determination as proposed findings of fact and conclusions of law to the district court for review at the appropriate time. *See Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 28 134 S. Ct. 2165, 189 L. Ed. 2d 83 (2014).[7]

## II.    FAILURE TO STATE A CLAIM – RULE 12(B)(6)

### A.    *STANDARD OF REVIEW*

A motion filed under Rule 12(b)(6) challenges the legal sufficiency of the complaint and provides that a party may move to dismiss for failure to state a claim upon which relief can be granted. The legal sufficiency of the complaint is measured by whether it meets the standards for a pleading set forth in Rules 8 and 12(b)(6). *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8 requires the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868

---

[6] The MGW Defendants mention in their Motion that this Court must decline jurisdiction over these claims and the order of reference must be withdrawn, and preserve their right to make such motion at the appropriate time.

[7] If warranted, "[t]he district court may treat any order of the bankruptcy court as proposed findings of fact and conclusions of law in the event the district court concludes that the bankruptcy judge could not have entered a final order or judgment consistent with Article III of the United States Constitution." *Standing Order Concerning Title 11 Proceedings Referred Under Local Civil Rule 83.IX.01, Referral to Bankruptcy Judges*, Misc. No. 3:13-mc-00471-TLW (D.S.C. Dec. 5, 2013).

(2009) (quoting in *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).   A complaint meets the plausibility standard when it "articulate[s] facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'" *Giacomelli*, 588 F.3d at 193 (quoting *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937).   The pleader must provide more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955 (citations omitted).   In deciding a motion to dismiss, the Court must accept as true all factual allegations contained in the complaint and draw reasonable inferences in favor of the nonmoving party. *Priority Auto Grp., Inc. v. Ford Motor Co.*, 757 F.3d 137, 139 (4th Cir. 2014). However, the Court will not extend this assumption of truth to "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955).   Although "legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Id.* at 679, 129 S. Ct. 1937.

Generally, "courts are limited to considering the sufficiency of allegations set forth in the complaint and the documents attached or incorporated to the complaint." *Zak v. Chelsea Therapeutics Int'l Ltd.,* 780 F.3d 597, 606 (4th Cir. 2015) (internal citations omitted).   If a document is "integral to and explicitly relied on in the complaint" and there are no questions as to its authenticity, then the Court may consider the document as it has effectively been incorporated to the complaint. *Phillips v. LCI Intern., Inc.,* 190 F.3d 609, 618 (4th Cir. 1999).

### B.  BREACH OF FIDUCIARY DUTY

#### i.  TRUST FUND THEORY

The Amended Complaint alleges the MGW Defendants owed professional duties initially to the Debtors; however, soon after their engagement the MGW Defendants knew or should have

known of the Debtors' insolvency.  The Trustee asserts from that point forward, the MGW Defendants owed fiduciary duties to the Debtors and their creditors.  The MGW Defendants argue dismissal is appropriate under Rule 12(b)(6) because they owed no fiduciary duties to the Debtors' creditors.

"A confidential or fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience is bound to act in good faith and with due regard to the interests of the one imposing the confidence." *Davis v. Greenwood Sch. Dist. 50,* 365 S.C. 629, 635, 620 S.E.2d 65, 68 (2005).  "To establish a claim for breach of fiduciary duty under South Carolina law, a plaintiff must prove (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) damages proximately resulting from the wrongful conduct of the defendant." *In re Infinity Bus. Grp., Inc.*, 628 B.R. 213, 239-40 (D.S.C. 2021) (citing *RFT Mgmt. Co., L.L.C. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 732 S.E.2d 166, 173 (2012)).  The existence of a fiduciary duty is a question of law. *Id.* at 240.  In *PCS Nitrogen, Inc. v. Ross Dev. Corp.*, the District Court analyzed whether South Carolina law allows creditors of a corporation to assert a derivative cause of action for common law breach of fiduciary duty against the corporation's directors and officers, or if such action was abrogated by subsequent legislation. 126 F. Supp. 3d 611, 620-27 (D.S.C. 2015).  The court concluded such common law actions remained and found that "***directors*** of a corporation owe the same fiduciary duties to creditors when the corporation is insolvent that ***directors*** owe shareholders when the corporation is solvent." *Id.* at 621 (emphasis added).  This shifting of fiduciary duties from shareholders to creditors is better-known as the "trust fund theory" and has been long recognized by South Carolina courts. *Id.*  The economic reasoning for the trust fund theory is summarized as follows:

> When solvent, a corporation's creditors' rights are protected by the law of contract, whereas shareholders, as the residual owners of the corporation, bear the risk of

*officers' or directors'* mismanagement and are thus owed a fiduciary duty. Upon insolvency, however, creditors displace shareholders as the residual owners of the corporation. Upon insolvency, then, creditors rather than shareholders bear the whole risk of mismanagement and are, therefore, owed the fiduciary duties formerly owed shareholders.

*Id.* at 622 (citations omitted); *see also Rice v. City of Columbia*, 143 S.C. 516, 141 S.E. 705, 712 (1928) ("[T]he very moment a corporation, banking or other, reaches the point of insolvency (presumptively, as a matter of course, to the knowledge of the managing agents of the corporation), certainly in the immediate prospect of dissolution and bankruptcy, its assets become impressed with a solemn trust to be distributed ratably among its creditors, subject, of course, to liens; and the managing agents become the administrators of that trust.").

The fiduciary obligations set forth under the trust fund theory are limited to corporate directors and officers. The *PCS Nitrogen* court and other jurisdictions have not applied it to third parties engaged to do business for the corporate entity without assuming a management position under the entity's governance. *See, e.g.*, *FDIC v. Sea Pines Co.*, 692 F.2d 973, 976-77 (4th Cir. 1982) ("[W]hen the corporation becomes insolvent, the fiduciary duty of the directors shifts from the stockholders to the creditors."); *In re Ontos, Inc.*, 478 F.3d 427, 432 (1st Cir. 2007); *Carrieri v. Jobs.com Inc.*, 393 F.3d 508, 534 n.24 (5th Cir. 2004) ("Officers and directors that are aware that the corporation is insolvent, or within the 'zone of insolvency' as in this case, have expanded fiduciary duties to include the creditors of the corporation."); *Mitchell v. Lyons Prof. Serv., Inc.*, 109 F. Supp. 3d 555, 570 (E.D.N.Y. 2015); *ASARCO LLC v. Ams. Mining Corp.*, 396 B.R. 278, 395 (S.D. Tex. 2008); *Technic Eng'g v. Basic Envirotech, Inc.*, 53 F. Supp. 2d 1007, 1011 (N.D. Ill. 1999) (clarifying the fiduciary duties are owed to the corporation's creditors by directors and officers, not just directors); *In re Northstar Dev. Corp.*, 465 B.R. 6, 16-17 (Bankr. W.D.N.Y. 2012); *In re Southwest Supermarkets*, *LLC*, 376 B.R. 281, 285 (Bankr. D. Ariz. 2007). There are no allegations in the Amended Complaint the MGW Defendants served as officers or directors of

the Debtors.  Because the MGW Defendants were retained only as Debtors' counsel, the Court

cannot find – and the Trustee has presented no legal authority in support – that they owed any

fiduciary duties to the creditors upon Debtors' insolvency.

### ii.  DUPLICATIVE CAUSES OF ACTION

The Trustee alleges the MGW Defendants, as counsel for the Debtors, owed those entities

fiduciary duties for which he may assert a claim for a breach thereof on behalf of the estate.  The

Amended Complaint's cause of action for Breach of Fiduciary Duty alleges, in relevant part:

> 136. . . . McGuireWoods were to adequately, timely and competently counsel, plan,
> advise, prepare and to be a good steward of Estate funds and assets to the benefit
> and in the interest of the Debtor's creditors.

> 137. However, McGuireWoods failed to properly advise Mr. Daileader, Mr.
> Kibbey, and Huron to the detriment of the creditors and the Estate.

The MGW Defendants assert dismissal of this claim is appropriate under Rule 12(b)(6) because it

is duplicative of the legal malpractice claim.  The Negligence/Professional Malpractice cause of

action alleges, in relevant part:

> 188. At all relevant times, a client-lawyer relationship existed between the Debtor,
> on the one hand as client, and the Lawyers, on the other as professional attorneys.

> 189. The scope of the Lawyers' representation of the Debtor was to provide legal
> services, counsel, advice, preparation, drafting, careful planning and review of
> ongoing facts and circumstances with a view toward providing benefit to those
> entities and individuals to whom the Lawyers owed a duty.
> . . . .

> 191. The Lawyers breached their professional duties to the Debtor and its creditors
> by failing to adequately, timely and competently provide legal services, counsel,
> advice, planning, and preparation with a view toward maximizing the value of the
> Debtor's assets and minimizing to the extent possible the expansion of future debt
> without realistic benefit to those to whom the Lawyers owed a duty of professional
> care.

> 192. The Lawyers failed to meet the minimum standard of care thereby breaching
> professional duties to the Debtor and creditors in other ways and by such other
> particulars as the evidence developed during discovery in this case may
> demonstrate.

"A claim for breach of fiduciary duty, as a general matter, is distinguishable from a claim for legal malpractice because it can arise in contexts other than one involving an attorney-client relationship." *RFT Mgmt.*, 732 S.E.2d at 173 (citing *In re Estate of Cumbee*, 333 S.C. 664, 511 S.E.2d 390 (Ct. App. 1999)).  "The South Carolina Supreme Court has held that a breach of fiduciary duty claim is 'duplicative' of a legal malpractice claim where the claim for breach of fiduciary duty 'arose out of the duty inherent in the attorney-client relationship and it arose out of the same factual allegations.'" *Vieira v. Simpson*, C/A No. 2:13-CV-2610-DCN, 2015 WL 1299959, at *3 (D.S.C. Mar. 23, 2015) (quoting *RFT Mgmt.*, 732 S.E.2d at 173).  Thus, a claim for legal malpractice encompasses the breach of any fiduciary duty the attorney owes the client; they are one in the same unless the complaint sets forth specific facts to demonstrate the "breach of fiduciary duty claim *is* distinguishable because it arises of out of a duty *other than* one created by the attorney-client relationship or because it was based on different material facts." *RFT Mgmt.*, 732 S.E.2d at 173 (emphasis in original) (footnote omitted).

The Amended Complaint does not set forth duties imposed on the MGW Defendants separate and independent from those created by their attorney-client relationship with the Debtors. It also fails to allege different material facts to support a breach of fiduciary duty claim separate from the legal malpractice cause of action.  While the malpractice claim goes into more detail regarding the MGW Defendants' alleged failures and shortcomings, both causes of action are premised on the same factual allegations and legal argument: the MGW Defendants failed to provide sound advice and prioritized their interests over the Debtors' best interests, thereby worsening the Debtors' financial condition and ultimately harming the Debtors' estates and creditors.  Accordingly, the Trustee's cause of action for Breach of Fiduciary Duty against the MGW Defendants must be dismissed pursuant to Rule 12(b)(6).

## C. *AIDING AND ABETTING BREACH OF FIDUCIARY DUTY*

This cause of action asserts alternative relief if the MGW Defendants did not hold any fiduciary duties.  The Trustee alleges if only Daileader and Kibbey owed fiduciary duties, then "Huron, Mark Freedlander, and McGuireWoods knowingly and willingly participated in Mr. Daileader and Mr. Kibbey's breaches as alleged in the First Cause of Action [for breach of fiduciary duty] herein."  While the cause of action quotes an email from Freedlander to Daileader, it is titled "Aiding and Abetting Breach of Fiduciary Duty *as to Huron*" and states "as a proximate result *of Huron* aiding and abetting Mr. Daileader and Mr. Kibbey in the breach of their fiduciary duties, the Estate and Plaintiff, on behalf of the creditors, have been damaged." (emphasis added). The MGW Defendants argue the claim should be dismissed because it fails to allege they were the cause of any of the damages sought by the Trustee.  The Trustee responds to this fatal flaw with a short paragraph that dismisses it as an inadvertent oversight.

"The elements of a cause of action for aiding and abetting a breach of fiduciary duty are: '(1) a breach of a fiduciary duty owed to the plaintiff (2) the defendant's knowing participation in the breach and (3) damages.'" *Becker v. Chandler Oaks, LLC*, C/A No. 7:18-CV-670-TMC, 2019 WL 7761728, at *6 (D.S.C. June 11, 2019) (quoting *Future Group, II v. Nationsbank*, 324 S.C. 89, 478 S.E.2d 45, 50 (1996)).   "The gravamen of the claim is the defendant's knowing participation in the fiduciary's breach." *Spivey Fam. LTD P'ship of Orlando v. Spivey*, C/A No. 4:16-CV-03311-RBH, 2017 WL 6034430, at *4 (D.S.C. Dec. 6, 2017) (citing *Future Group, II*, 478 S.E.2d at 50). "'Knowing participation' requires more than mere linked involvement in a breach; rather, there must be active encouragement or active procurement of the breach of fiduciary duty." *Fort v. Suntrust Bank*, C/A No. 7:13-CV-1883-BHH, 2016 WL 4492898, at *17 (D.S.C. Aug. 26, 2016), *aff'd sub nom. In re Int'l Payment Grp., Inc.*, 733 F. App'x 98 (4th Cir. 2018)

(citations omitted).  It is inherent to the cause of action that the damages must be caused by the defendant's knowing participation in the fiduciary's breach.

The Amended Complaint fails to allege any damages caused by the MGW Defendants' purported aiding and abetting of Daileader and Kibbey's breach of fiduciary duties.  The Court notes this deficiency was also contained in the original complaint.  Despite having an opportunity to correct this error, the Trustee's Amended Complaint still fails to properly plead this claim as to the MGW Defendants and it must be dismissed pursuant to Rule 12(b)(6).

### D. NEGLIGENCE/PROFESSIONAL MALPRACTICE

The MGW Defendants' Motion requests dismissal of this cause of action to the extent it is pleaded on behalf of the creditors because, as attorneys for the Debtors, they owed no independent duties to the creditors.  "A plaintiff in a legal malpractice action must establish four elements: (1) the existence of an attorney-client relationship, (2) a breach of duty by the attorney, (3) damage to the client, and (4) proximate causation of the client's damages by the breach." *RFT Mgmt.*, 732 S.E.2d at 170 (citations omitted).  "[A]n attorney is immune from liability to third persons arising from the performance of his professional activities as an attorney on behalf of and with the knowledge of his client." *Gaar v. N. Myrtle Beach Realty Co.*, 287 S.C. 525, 339 S.E.2d 887, 889 (Ct. App. 1986).  An attorney owes no duty to a non-client unless the attorney "breaches some independent duty to a third person or acts in his own personal interest, outside the scope of his representation of the client." *Stiles v. Onorato*, 318 S.C. 297, 457 S.E.2d 601, 602 (1995) (discussing a conspiracy claim brought against a lawyer).

As explained above, the MGW Defendants did not owe an independent fiduciary duty to the Debtors' creditors.  The Amended Complaint generally alleges the MGW Defendants acted in their own personal interests to continue generating work for themselves that was ultimately not

beneficial to the Debtors and, consequently, the creditors.  However, there are no allegations that

the MGW Defendants acted outside the scope of their representation – only that they "failed to

properly advise Mr. Daileader, Mr. Kibbey, and Huron to the detriment of the creditors and the

Estate."  On the face of the Amended Complaint, the only reasonable inference is that the MGW

Defendants were acting in their capacity as attorneys for the Debtors and may not be pursued by

third parties for actions taken in that professional capacity. *See id.* at 603.  Accordingly, to the

extent the Trustee asserts a legal malpractice claim against the MGW Defendants on behalf of the

creditors, it must be dismissed pursuant to Rule 12(b)(6).  However, any portion of the legal

malpractice cause of action asserted on behalf of the estate remains.

### E.  CIVIL CONSPIRACY

The Trustee's cause of action for civil conspiracy incorporates prior allegations of the

Amended Complaint and states:

> 201. Defendants, by and between themselves, conspired to interfere with, delay, hinder, and/or prevent the Debtors' creditors from collecting debts the creditors were properly entitled to collect in order to pay the Defendants' own fees.

> 202. As a proximate result of the Defendants' conspiracy against the Estate and Plaintiff, on behalf of the creditors, the Plaintiff has incurred damages.

> 203. The Plaintiff is also entitled to an appropriate award of punitive damages due to the conspiracy undertaken by the Defendants.

The MGW Defendants argue this cause of action should be dismissed under Rule 12(b)(6) because

it fails to allege any intent to harm or overt act in furtherance of the conspiracy that is separate and

independent from other allegations of wrongful acts.  The MGW Defendants also argue this claim

must be dismissed because South Carolina law precludes the Trustee from relying on a conspiracy

claim as an alternative cause of action.

To state a claim for civil conspiracy, a plaintiff must plead facts sufficient to establish "(1)

the combination or agreement of two or more persons, (2) to commit an unlawful act or a lawful

act by unlawful means, (3) together with the commission of an overt act in furtherance of the agreement, and (4) damages proximately resulting to the plaintiff." *Paradis v. Charleston Cnty. Sch. Dist.*, 433 S.C. 562, 861 S.E.2d 774, 780 (2021).  The plaintiff "must plead additional facts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the complaint, and the failure to properly plead such acts will merit the dismissal of the claim." *Hackworth v. Greywood at Hammett, LLC*, 385 S.C. 110, 682 S.E.2d 871, 875 (Ct. App. 2009), *overruled on other grounds by Paradis*, 861 S.E.2d 774.   Stated another way, "'[w]here the particular acts charged as a conspiracy are the same as those relied on as the tortious act or actionable wrong, plaintiff cannot recover damages for such act or wrong, and recover likewise on the conspiracy to do the act or wrong.'" *Todd v. S.C. Farm Bureau Mut. Ins. Co.*, 276 S.C. 284, 278 S.E.2d 607, 612 (1981) (quoting 15A C.J.S. *Conspiracy* § 33, at 718)), *overruled on other grounds by Paradis*, 861 S.E.2d 774; *see also Coker v. Norwich Com. Grp., Inc.*, C/A No. 3:20-03071-MGL, 2021 WL 4037472, at *6 (D.S.C. Sept. 3, 2021) (dismissing the civil conspiracy claim because the plaintiff "merely reincorporated his previous claims and added conclusory allegations the Individual Defendants were engaged in a civil conspiracy").   A plaintiff cannot avoid pleading separate and independent acts in furtherance of the conspiracy by simply couching the conspiracy claim as an alternative to other causes of action asserted in the complaint. *See Jinks v. Sea Pines Resort, LLC*, C/A No. 9:21-CV-00138-DCN, 2021 WL 4711408, at *4 (D.S.C. Oct. 8, 2021) (citing *Howard v. Allen Univ.*, C/A No. 3:11-2214-MBS-SVH, 2012 WL 3637754, at *8 (D.S.C. Feb. 27, 2012), *report and recommendation adopted*, 2012 WL 3637746 (D.S.C. Aug. 22, 2012) (rejecting the plaintiff's argument that the civil conspiracy claim should not be dismissed because he pled civil conspiracy as an alternative to his defamation claim, such that those claims were not duplicative); *Watson v. Adams*, C/A No. 4:12-3437-BHH, 2017 WL 1001122, at *18

(D.S.C. Mar. 15, 2017) (dismissing civil conspiracy claim where the plaintiff pled it in the alternative but failed to allege additional acts in furtherance of a conspiracy rather than reallege other claims within the complaint)).  Additionally, "[s]ince civil conspiracy is an intentional tort, an intent to harm, which has also been discussed in our conspiracy law, remains an inherent part of the analysis." *Paradis*, 861 S.E.2d at 780; *see also Jinks*, 2021 WL 4711408, at *3 ("Where, for example, alleged conspirators acted out of a general desire to make a profit rather than to harm the plaintiff, a claim for civil conspiracy cannot lie." (citing *Bivens v. Watkins*, 313 S.C. 228, 437 S.E.2d 132, 136 (Ct. App. 1993))).

Viewing the allegations in the light most favorable to the Trustee and taking all well-pleaded factual allegations as true, the Court finds the Trustee fails to allege any additional acts by the MGW Defendants in furtherance of a conspiracy that are separate and independent from other wrongful acts alleged in the Amended Complaint.  Rather, this cause of action incorporates prior allegations included in alternative forms of relief and recites that the Defendants conspired together to pay themselves and the estate and creditors were harmed as a result.  These facts serve the basis for nearly every other cause of action brought by the Trustee. Moreover, the Trustee fails to allege any intent to harm, alleging only that the MGW Defendants sought to profit from the Debtors' financial distress.  Because the Amended Complaint merely reincorporates previous claims and adds conclusory allegations that the MGW Defendants were engaged in a civil conspiracy, it fails to state a claim for relief and this cause of action must be dismissed under Rule 12(b)(6).

### F.  UNJUST ENRICHMENT

The Trustee's cause of action for unjust enrichment alleges:

205. Through their negligent acts as detailed herein, Defendants Mr. Daileader, as Independent Director, and Huron, for their own benefit, utilized the Debtors' profits to pay themselves.

206. It would be unjust to the creditors to allow Defendants to retain those ill-gotten gains.

207. Accordingly, as a result of the foregoing, Plaintiff is entitled to recover the damages proximately resulting from Defendants' actions, including the amount of all valid unsecured claims.

"Unjust enrichment is an equitable doctrine which permits the recovery of that amount the defendant has been unjustly enriched at the expense of the plaintiff." *Dema v. Tenet Physician Servs.-Hilton Head, Inc.*, 383 S.C. 115, 678 S.E.2d 430, 434 (2010). One seeking recovery for unjust enrichment must show "(1) a benefit conferred upon the defendant by the plaintiff; (2) realization of that benefit by the defendant; and (3) retention by the defendant of the benefit under conditions that make it unjust for him to retain it without paying its value." *Columbia Wholesale Co. v. Scudder May N.V.*, 312 S.C. 259, 440 S.E.2d 129, 130 (1994). The remedy for unjust enrichment is restitution. *Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 581 S.E.2d 161, 167 (2003).

This cause of action fails to state a claim for relief because no benefit was conferred upon the MGW Defendants by the Debtors' creditors. Although the creditors may have been secondarily harmed by a reduction in estate monies paid to the professionals, that does not provide a private right of action here. The cause of action is also deficient because it only discusses other defendants and fails to allege any benefit conferred upon or realized by the MGW Defendants. Therefore, this cause of action must be dismissed pursuant to Rule 12(b)(6).

### G. PREFERENCE UNDER § 547

The Trustee's § 547 claim incorporates prior allegations of the Amended Complaint and alleges the following:

224. The professional fees paid to the Defendants in the one year prior to the Petition Date were made to the Defendants for or on account of an antecedent debt by the Debtors to the Defendants and Plaintiff is informed and believes that the

Transfers constitute avoidable preferences pursuant to 11 U.S.C. § 547 of the United States Bankruptcy Code.

225. At the time of the Transfers, the Debtors were insolvent and Defendants were insiders.

226. The payments referred to in the proceeding [sic] paragraphs enabled the Defendants to receive more than they would have received under Chapter 7 of the Bankruptcy Code if the Transfers had not been made.

227. By reason of the forgoing [sic], Defendants are liable to Plaintiff in the full amount of the professional fees paid to them.

The MGW Defendants request this cause of action be dismissed for failing to adequately identify the alleged preference payments with required specificity, and Freedlander and Pivnick are not transferees under the Bankruptcy Code.

Section 547 defines certain transfers that were made from the debtor's estate before filing as "preferences" and allows the trustee to avoid them. In order to be avoided under § 547(b), the transfer must be: (1) of an interest of the debtor in property; (2) to or for the benefit of a creditor; (3) for or on account of an antecedent debt owed by the debtor before the transfer was made; (4) made while the debtor was insolvent; (5) made on or within ninety days before the petition date, or between ninety days and one year before the petition date if such creditor was an insider at the time of the transfer; and (6) enable the creditor to receive a greater percentage of its claim than it would under the normal distributive provisions in a liquidation case under the Code. *See In re Railworks Corp.*, 760 F.3d 398, 402 (4th Cir. 2014) (quoting *Morrison v. Champion Credit Corp. (In re Barefoot)*, 952 F.2d 795, 798 (4th Cir. 1991)). Section 101(31) defines an "insider" by providing non-exclusive[8] examples thereof, including a person in control of the corporate debtor and a managing agent of the corporate debtor. Additionally:

[a] non-statutory insider "may be any person or entity whose relationship with the debtor is sufficiently close so as to subject the relationship to careful scrutiny." *Butler v. David Shaw, Inc.*, 72 F.3d 437, 443 (4th Cir. 1996). Insider status is

---

[8] The term "includes" as used in § 101(31) means it is not limiting (i.e., non-exclusive). 11 U.S.C. § 102(3).

determined by "a ***factual inquiry*** into the closeness of the relationship between the parties and whether the transaction between the transferee and debtor was conducted at 'arm's length.'" *In re Three Flint Hill Ltd. P'ship*, 213 B.R. 292, 297-98 (D. Md. 1997) (finding that while control is certainly probative of an insider relationship, it is not required for finding insider status).

*In re Madeoy*, C/A No. 12-32701-TJC, 2015 WL 4879960, at *15 (Bankr. D. Md. July 30, 2015) (emphasis added).   "A creditor's insider status 'is to be determined on the exact date of the transfer.'" *In re Oconee Reg'l Health Sys., Inc.*, 621 B.R. 64, 77-78 (Bankr. M.D. Ga. 2020) (quoting *Liberty Sav. Bank, FSB (In re Toy King Distrib., Inc.)*, 256 B.R. 1, 97-98 (Bankr. M.D. Fla. 2000)).

There are no allegations that Freedlander or Pivnick personally received any funds from the Debtors prior to filing, or that they were creditors of the Debtors and their prepetition receipt of funds allowed them to receive more than they otherwise would in the bankruptcy proceeding. Therefore, to the extent the Trustee's cause of action seeks to avoid any preferential transfers against Freedlander or Pivnick, it must be dismissed pursuant to Rule 12(b)(6).

Regarding MGW, considering the Amended Complaint in its entirety and viewing the allegations in the light most favorable to the Trustee, and taking all well-pleaded factual allegations as true, the Court finds it could be pled more completely but nonetheless states a plausible claim for relief under § 547.   While the cause of action only recites the elements for a claim under § 547(b), when read in its entirety, the Amended Complaint sets forth factual allegations from which the Court can draw reasonable inferences in the Trustee's favor that: MGW received a number of transfers in the form of payments for their professional fees in the total amount of approximately $1,458,637.08, of which $61,620.00 was paid the day before the Chapter 7 filings; the transfers occurred within one year of the petition date during which time the Debtors were insolvent; and those payments to MGW were made in lieu of payments to Debtors' creditors and allowed MGW to receive more than it would in a Chapter 7 liquidation.   The Amended Complaint

includes allegations tending to show MGW's close relationship with the Debtors and ability to have some form of control over the Debtors by providing restructuring, corporate, and healthcare legal services to the entire enterprise. These allegations raise the question of whether MGW is an insider, which is a factual determination to be made at some point after the pleading stage. *See Oconee Reg'l Health Sys.*, 621 B.R. at 78 ("at the pleading stage, a complaint need only to 'raise the possibility that the Defendant was an insider of the debtor at the time of the payments above the speculative level." (quoting *In re Alpha Protective Servs., Inc.*, 531 B.R. 889, 901 (Bankr. M.D. Ga. 2015))). While the specific dates and amounts for each transfer are not alleged in detail, the transfers at issue here are identifiable, finite in number, and limited to the legal fees paid to MGW during the one year prior to the petition date.[9] Whether MGW was an insider and whether the Trustee will ultimately be successful on this claim require factual determinations not fit for this stage of the litigation. The Amended Complaint, therefore, meets the requisite pleading standards to state a plausible claim for relief under § 547(b) and gives MGW sufficient information to respond and raise any applicable defenses.

## III.   STANDING – RULE 12(B)(1)

The MGW Defendants argue that to the extent the state law causes of action (i.e., Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty, Negligence/Professional Malpractice, Civil Conspiracy, and Unjust Enrichment) are asserted on behalf of the Debtors' creditors as opposed to the estate, they must be dismissed under Rule 12(b)(1). Because these

---

[9] The MGW Defendants' Motion briefly mentions that the Amended Complaint fails to name the specific debtor/transferor for each of the alleged preferential transfers but fails to develop this argument. Additionally, the MGW Defendants and the Trustee refer to each of the debtors collectively as "OMC" or "Debtors" throughout their pleadings, making the Court question which debtor(s) paid MGW. Since the allegations of the Amended Complaint state the "Debtors" made the transfers, accepting this allegation as true, dismissal is not warranted at this point.

causes of action (or portions thereof) are dismissed under Rule 12(b)(6) grounds, the standing issue under Rule 12(b)(1) is now moot and does not need to be addressed by the Court.

<u>**CONCLUSION**</u>

For the foregoing reasons, and having carefully considered the pleadings and applicable law, the Motion to Dismiss filed by Defendants McGuireWoods, LLP, Mark Freedlander, and David Pivnick is granted in part and denied in part as follows:

1. pursuant to Rule 12(b)(6), the MGW Defendants' request to dismiss the following causes of action is granted:

   a. First Cause of Action – Breach of Fiduciary Duty;

   b. Second Cause of Action – Aiding and Abetting Breach of Fiduciary Duty

   c. Fifth Cause of Action – Civil Conspiracy; and

   d. Sixth Cause of Action – Unjust Enrichment

2. the MGW Defendants' request to dismiss the Third Cause of Action – Negligence/ Professional Malpractice pursuant to Rule 12(b)(6) is granted to the extent the claim is asserted on behalf of the Debtors' creditors;

3. the MGW Defendants' request to dismiss the Ninth Cause of Action – Preference under § 547 pursuant to Rule 12(b)(6) is granted as to Defendants Pivnick and Freedlander and denied as to Defendant MGW; and

4. the MGW Defendants' request to dismiss pursuant to Rule 12(b)(1) is moot.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**04/19/2022**



Chief US Bankruptcy Judge
District of South Carolina

21

Entered: 04/19/2022